IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: : | Chapter 11 |
| : | |
| FLYi, INC., et al. : | Case No. 05-20011-MFW |
| : | Jointly Administered |
| Debtors. : | |
| : | |

## MOTION TO COMPEL DISCOVERY

Loudoun Gateway III, LLC ("LLC"), by and through its undersigned counsel, hereby files this Motion to Compel Discovery, and in support thereof states as follows:

### I. RELEVANT FACTS UNDERLYING THE INSTANT DISCOVERY DISPUTE

1.  On March 19, 2008, LLC served discovery requests, including a First Request for the Production of Documents (the "Document Requests"), upon The FLYi and Independence Air Liquidating Trust (the "Trust"). A copy of the Document Requests is attached hereto as <u>Exhibit 1</u>.

2.  Pursuant to this Court's Scheduling Order of March 18, 2008, the Trust's responses to the Document Requests were due on April 9, 2008. On April 9, 2008, LLC's counsel received a copy of the Trust's narrative responses to the Document Requests from the Trust's Delaware counsel, along with a box containing 724 pages of paper documents and approximately 50,000 pages of documents in electronic format.

3.  As described below, the documents produced by the Trust electronically (i.e., the vast majority of the documents produced) do not comply with the strictures of the F.R.C.P. and are impossible to meaningfully review absent undue burden upon the LLC.

4.  The Trust's 50,000 page electronic document production is contained on 2 DVDs, each of which is comprised of 50 directories. Each directory, in turn, is identified only by a

sequential number (e.g., 001, 002, etc.), and there is therefore no way to discern the types of documents each individual directory contains. See "screenshot" of directory structure, attached hereto as Exhibit 2.

5. Additionally, each of the 100 directories is comprised of approximately 500 separate "TIF" image files, each TIF file representing only a single page. See "screenshot" of TIF files, attached hereto as Exhibit 3. These TIF files are each identified only by the bates number corresponding to the particular image, so there is no way to determine what each TIF image represents (short of opening the TIF file). Id.

6. Additionally, since each TIF image file only corresponds to a single page, and since many of the documents produced by the Trust are comprised of multiple pages, there is no way (short of opening, printing and collating each individual TIF file) to determine where each individual document begins and ends (let alone, a way to determine the relationship between the individual documents). Id.

7. The onerous manner in which the Trust's documents were produced is compounded by the fact that many (if not the majority) of the TIF image pages produced by the Trust appear to either be unresponsive to LLC's Document Requests, or of questionable responsiveness. For example, a large number of these pages seem to be spreadsheets containing raw financial data having no ostensible relationship to the LLC's Document Requests.[1] As such, it is impossible without extreme burden for LLC to determine whether the Trust had failed to produce responsive documents, or, alternatively, whether such documents were "buried" in a mass of unresponsive and irrelevant TIF image files.

---

[1] Moreover, many of the TIF images which are in spreadsheet form appear to be either incomplete, or they are formatted in such a way that their data is unintelligible when the spreadsheet is printed.

8.  Finally, among the TIF image pages produced by the Trust, there were large series of bates ranges comprised exclusively of duplicates of the same TIF image. See, for example, bates ranges, 12725-12833, 12834-13009, 13011-13185 and 13187-13361, attached hereto collectively as Exhibit 4.

## II. ATTEMPTS TO RESOLVE THE INSTANT DISCOVERY DISPUTE

9.  On April 28, 2008, LLC's counsel transmitted a letter to the Trust's Delaware counsel, informing them of the numerous and pervasive deficiencies in the Trust's document production. A copy of this letter is attached hereto as Exhibit 5.

10. In response, on April 28, 2008, LLC's counsel received an e-mail from the Trust's Delaware counsel steadfastly denying "that anyone would considered [sic.] this to be an overly burdensome electronic production." See Exhibit 6.

11. However, on that same day, LLC's counsel also received a phone call from the Trust's Ohio counsel. During this phone conversation, the parties discussed numerous discovery-related issues, including the Trust's non-compliant and unduly burdensome document production. The Trust's Ohio counsel indicated that they had certain electronic "metadata" files that would permit a more effective review of the Trust's documents, and agreed to produce those files to LLC.

12. Shortly after this phone call, the Trust's Ohio counsel provided LLC's counsel (via e-mail) with an exemplar of a metadata file which purportedly contained information sufficient to permit LLC to meaningfully review the Trust's documents. See e-mail attached hereto as Exhibit 7.

13. A complete iteration of the same metadata file (on DVD in a "dat." format) was also sent via overnight mail by the Trust's Ohio counsel to LLC's counsel.

14. On April 28, 2008, LLC's counsel opened the exemplar metadata file provided via e-mail earlier that day. However, the information contained in this file was unintelligible (specifically, legible text was interspersed with illegible text). See Exhibit 8.

15. On April 29, 2008, LLC's paralegal and an IT specialist each attempted to open the complete iteration of the dat. metadata files contained on the DVD transmitted overnight by the Trust's Ohio counsel, but were unable to do so.

16. Accordingly, on April 29, 2008, LLC's counsel sent an e-mail to the Trust's counsel informing them that the metadata files transmitted by the Trust could not be opened and were unintelligible, and requesting that the parties confer telephonically to resolve the issue. See e-mail attached hereto as Exhibit 9.

17. On May 1, 2008, LLC's counsel and their IT specialist conferred via phone with one of the Trust's Ohio counsel to resolve the electronic production issues. During this conversation, the Trust's Ohio counsel agreed to provide the metadata files to LLC's counsel in a different format (i.e., in Microsoft Excel).

18. On May 2, 2008, LLC's counsel received a DVD containing the Trust's metadata files in Microsoft Excel format. Once again, when LLC's counsel and their paralegal attempted to access the data on these files, the information produced was unintelligible. See screenshot attached hereto as Exhibit 10.

19. On May 6, 2008, LLC's counsel's IT specialist also attempted to access the Microsoft Excel metadata files contained on the DVD transmitted by the Trust's Ohio counsel, but was likewise unsuccessful. Id. On that same day, LLC's counsel transmitted an e-mail to the Trust's counsel advising them that all diligent efforts to open the metadata files had proven unsuccessful. See Exhibit 11.

4

## III. ARGUMENT

### A. The Trust Should Be Compelled To Produce Documents In Accordance With F.R.C.P. 34

20.     F.R.C.P. 34, as incorporated by the Federal Rules of Bankruptcy Procedure, requires that documents produced in response to a document request be provided "as they are kept in the ordinary course of business or [the party] must organize and label them to correspond to the categories in the request." The Trust's document production violates both the letter and the spirit of F.R.C.P. 34.

21.     Firstly, it would strain credulity for the Trust to suggest that the manner in which their counsel initially produced the Trust's responsive documents was the manner in which they are kept in the ordinary course of business. In any functioning business, stored documents (whether in paper or electronic format) must be organized by file name, subject or some other method which would permit an individual looking for a particular document to locate the document without having to search through the entirety of the business' files.

22.     However, as described above, the Trust's electronic document production is cryptically organized in sequentially-numbered directories without any indication as to the nature of the documents contained in each directory. Even when these directories are opened, there is no way to determine what each of the 50,000 separate TIF files purports to represent without first opening the file, since the TIF files are identified only by their corresponding bates-number.

23.     To compound the problem, each TIF file within each of the numbered directories represents only an individual *page* of a document, rather than an individual document itself. As mentioned, since each TIF file only corresponds to a single page, and since many of the documents are comprised of multiple pages, there is no way, short of opening and printing each individual TIF file, to determine where each individual document begins and ends.

24. To analogize, and to permit the Court to understand the severity of the problem, it is as if the Trust had produced each of 50,000 pages of documents in individual unlabeled manila folders, without regard as to how adjacent pages may comprise individual documents, or how individual documents may relate to each other. No business organizes its documents in such a fashion.[2]

25. It is the Trust's obligation, in the first instance, to meet its obligations to produce documents in accordance with F.R.C.P. 34. The Trust has plainly failed to meet this obligation by failing to comply with the letter and spirit of Rule 34, as described above. Instead its Delaware counsel chose to produce its documents in the most deliberately burdensome manner conceivable.

26. LLC's counsel do concede that the Trust's counsel have made an effort to cure the patently deficient, onerous and burdensome initial production by the Trust. Nonetheless, the efforts by such counsel to cure the Trust's discovery deficiencies (which have, in any event, proven to be fruitless) cannot excuse, mitigate or justify the Trust's initial document production, which was so unnecessarily burdensome that it suggests that the Trust did not make a good faith effort to comply with LLC's discovery requests.

27. Moreover, as a practical matter, the efforts of the Trust's counsel to remedy the Trust's initially-defective production have been completely unsuccessful, given that the metadata files they provided to LLC have either been impossible to open or unintelligible (notwithstanding the repeated diligent efforts of LLC's counsel, their staff and IT consultants).

---

[2] By contrast, LLC's documents were produced in precisely the manner in which they were kept in the ordinary course of business, complete with the labels for the individual files.

28.     Accordingly, the documents produced by the Trust remain essentially unreviewable nearly a month after their original production, and nearly two weeks after LLC's counsel's letter of April 25.

29.     The burden should not fall upon LLC to continue to have to "wade" through the morass of cryptically-labeled, onerously-organized, illegible and duplicative documents produced by the Trust in derogation of F.R.C.P. 34. Nor is it LLC's obligation to retain a series of IT experts to ascertain why the metadata files produced by the Trust continue to be unreadable and unintelligible, particularly with trial looming imminent.

30.     For each of the foregoing reasons, LLC respectfully requests that the instant Motion be granted, and that the Trust be compelled to produce documents in accordance with F.R.C.P. 34.

Dated: May 7, 2008

Respectfully submitted,

*[signature]*

Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Tel: (302) 661-7000
Fax: (302) 661-7360
Email: counihanv@gtlaw.com
        melorod@gtlaw.com
and

Emil Hirsch
O'Connor & Hannan, LLP
1666 K Street N.W., Suite 500
Washington, D.C. 20006
Tel: (202) 887-1400
Fax: (202) 466-2198
Email: ehirsch@oconnorhannan.com

*Attorneys for Loudoun Gateway III, LLC*

## **CERTIFICATION**

I hereby certify that I attempted in good faith to resolve the discovery dispute giving rise to the instant Motion, but was unable to do so. These efforts are recounted in Section II., <u>supra</u>, of the instant Motion.

                                                /s/Tamir Damari  
                                                Tamir Damari

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2008, a copy of the foregoing document was sent via e-mail and in the manner indicated:

>VIA HAND DELIVERY:
>M. Blake Cleary, Esq.
>Young Conaway Stargatt & Taylor, LLP
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19899-0391
>
>VIA FIRST CLASS MAIL:
>Robert W. Hamilton, Esq.
>Mary E. Tait, Esq.
>Jones Day
>325 John H. McConnel Blvd., Suite 600
>Columbus, Ohio 43216-5017

Dennis A. Meloro (No. 4435)